(No. 25974.—
CHESTER GUHL *et al.* Appellants, *vs.* ETTA HATFIELD GUHL, Appellee.

*Opinion filed February 18, 1941—Rehearing denied April 8, 1941.*

Franklin J. Stransky, and Robert P. Eckert, Jr., for appellants.

Manus & Manus, and Burrell & Burrell, (Albert H. Manus, of counsel,) for appellee.

Mr. Justice Murphy delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Stephenson county entered in a cause where an original action in equity and an appeal case from the county court were consolidated and disposed of by one decree. Appellants are the sons of Christian Guhl, deceased, and appellee is the widow. The real estate and personal property owned at the time of Christian Guhl's death furnishes the subject matter of the litigation and the controversy is as to the

rights of the respective parties in the property as they are affected by the will of deceased and an ante-nuptial agreement executed by him and appellee.

Deceased and appellee, aged sixty-eight and sixty-one, respectively, were married February 15, 1934. Each of them had children by prior marriages. He was a resident of Freeport, in this State, and she resided in Darlington, Wisconsin. Nine days previous to the marriage the agreement in question was executed. It stated that the marriage of the parties was contemplated and in view of the fact that the marriage would change the domicile and the rights of one in the property of the other and "that the property of each would become subject to dower, curtesy, homestead and widow's award rights of each in the other's property" and that whereas, each desired "that the property of each shall ultimately become the property of and descend to the respective child or children of the parties hereto as the same would in the event that said marriage was not solemnized," therefore they agree "That after said marriage shall be consummated, the party of the first part shall reserve, have and retain the sole and exclusive right, title and interest in and the control and disposition of, during his lifetime, all of his personal property owned by him at the time of the marriage and at any time thereafter acquired; all real estate at the time of the marriage or any time thereafter owned and acquired by him shall be retained by him during his lifetime (unless disposed of during his lifetime by the lawful conveyance of both parties.) In case the first party shall predecease the second party the second party shall have the use, income and enjoyment of all of the property, real, personal and mixed, wheresoever situated, belonging to the first party, excepting, however, and excluding the bakery building and equipment located on West Pleasant street in the city of Freeport, Stephenson county, Illinois, and being operated and known as the Guhl Baking Company, for and during her natural life. And at the

death of the second party all of said property, real, personal and mixed, of the first party shall descend to the heirs of the party of the first part as he may bequeath and devise or as the law of descent provides, as the case may be. Upon the death of the party of the second part, either before or after the death of the party of the first part, all of her property, real, personal and mixed, and wheresoever situated, shall immediately descend to her legatees, devisees or her legal heirs according to the law of descent of the State of Wisconsin, as the case may then be."

October 17, following the marriage, Christian Guhl executed a will, in which he directed the payment of his debts and then devised and bequeathed to his four sons "The rest, residue and remainder of my estate, both real and personal, wheresoever situate, equally share and share alike." Appellee was not named as a beneficiary in the will. Christian Guhl died January 2, 1938, and the will was admitted to probate January 15, and letters testamentary issued to two of the appellants on the same day. January 12, 1939, appellee filed a renunciation of all provisions of the will and elected to take in lieu a one-third of the real estate and personal property to which she was entitled "as the widow of said deceased under the laws of the State of Illinois."

In April, 1938, appellee filed a petition in the county court for the appointment of appraisers to fix her award. Two of the appellants, as executors of the will, resisted the petition on the ground that the right to an award was waived by the ante-nuptial agreement. Appraisers were appointed, the award fixed at $575 and the appraisable personal property valued at $6144.31. Appellee petitioned for an increase. The executors objected to the allowance of any award. The court approved the action of the appraisers and the executors appealed from such order to the circuit court. In that court the appeal case was consolidated with the original cause.

For an understanding of the controverted issues it is necessary to make reference to the pleadings of the original action. The decision of those issues will dispose of the appeal action.

Appellants' first complaint was filed June 14, 1939. Later an amended complaint was filed and by it the appellants recognized the ante-nuptial agreement as being in full force and effect and alleged that appellee had a life estate in the real estate and that they, by virtue of the will, owned the remainder subject to said life estate. Appellee's renunciation and her claim for widow's award were pleaded. It was alleged that upon the death of Christian Guhl appellee had taken possession of the household goods and automobile and had continued in possession of all the real estate, except the bakery property, collected the income therefrom and was committing waste by non-payment of taxes and failure to make repairs. It was alleged the property which she had taken possession of constituted all the property owned by Christian Guhl at the time of his death, excepting certain bonds and bank deposits which were being held in the estate pending the ascertainment of the indebtedness of the estate, and that appellee would be deprived of the income, use and enjoyment of the same until the amount of said indebtedness had been fixed and paid. They asked for a construction of the ante-nuptial agreement and that it be construed to bar all rights of appellee in the property of Christian Guhl except as to the life estate given under the ante-nuptial agreement; that appellee be ordered to pay the taxes and in the event of her failure so to do, a receiver be appointed to collect the rents and use such part as was necessary in the payment of taxes and in making the necessary repairs. They also prayed that appellee be enjoined from committing waste.

Appellee's motion to strike the amended complaint alleged the ante-nuptial agreement was unenforcible and void. It did not assign any reasons for such conclusion. It was

also alleged appellants had failed to allege performance of all conditions precedent and claimed that, under the agreement, she was entitled to the possession of all the property. The motion was overruled and appellee filed an answer setting up alternative defenses. By the first alternative she admitted the execution of the ante-nuptial agreement, the existence of the will and its probate, that she was in possession of the real estate and that she had collected the rents. She alleged the value of the real estate to be in excess of $30,000. She denied failure to make repairs, admitted the non-payment of taxes and asked that she be excused on the ground that the income was insufficient to support her and meet the tax obligations. She pleaded the agreement did not bar her dower and homestead and that the indebtedness of the estate should be paid from the bakery property. By the other alternative defense she pleaded that the agreement was void and of no force for one or more of five reasons. The first and fifth reasons did not challenge the validity of the agreement, but, in fact, recognized it by setting up facts which would require a construction. By the first it was claimed the agreement did not bar dower, homestead or widow's award and by the fifth that she had not been paid her award and had been deprived of the use and income of the government bonds, loan deposits, cash in bank and the bakery property and that one of the appellants who occupied one of the houses had not paid any rent since June 15, 1939. The second, third and fourth assignments referred to matters which it is claimed invalidated the agreement. The contents of such assignments will be given later.

July 1, 1939, appellee filed a counter-claim in which she alleged the execution and probate of the will, her renunciation of the same, and claimed that by virtue thereof she was entitled to an undivided one-third in fee of the real estate, that the appellants each had an undivided one-sixth, all of which were subject to her homestead rights. No

reference was made to the ante-nuptial agreement or a disposition of any of the personal property. The prayer was for partition of the real estate. Appellants answered, admitting many of the uncontroverted facts pleaded but denied appellee had any fee or homestead rights in the premises and alleged that she had no interest other than what was given her by the ante-nuptial agreement.

After a hearing of evidence the chancellor dismissed appellant's original complaint for want of equity, granted partition as prayed by appellee's counter-claim, ordered the executors of the estate to pay the award in due course of administration and retained jurisdiction for the purpose of requiring an accounting of rents.

The rights of the parties are in the first analysis subject to a determination of whether the ante-nuptial agreement is valid, and if it is, in the second instance, to a construction of its terms and the effect it and the renunciation have on the disposition of the property as made by the will. The amended complaint and the first alternative in appellee's answer made no issue on the validity of the agreement. It merely asked for a construction of the instrument. As pointed out, the first and fifth assignments under the second alternative also raised questions of construction. The second is as follows: "(2) That prior to the signing of the said ante-nuptial agreement this defendant was not informed as to the extent of the property or income of the said Christian Guhl deceased and had no knowledge thereof." The third is that there was no valid consideration. The fourth "That the rights purported to be given to this defendant by said ante-nuptial agreement are entirely disproportionate to the amount that she would receive out of his estate under the law as the widow of said deceased, which fact was not disclosed to this defendant prior to the act of execution of said agreement."

Appellee contends there was a fiduciary relationship which required Christian Guhl to disclose to her, prior to

the execution of the agreement the extent of his property interests and that the burden rested upon appellants to allege facts in their amended complaint negativing the presumption of fraud that arises out of such relationship. It is also asserted that since the charge of fraud as contained in the answer was not denied by appellants in a reply it must be taken as an admitted fact. Such contention requires consideration of the facts as they existed at the time the pleading was filed. It is undisputed that after Christian Guhl's death appellee continued in possession of the homestead and immediately assumed control of all the other real estate, except the bakery property, and collected the rents from that part of it which was leased. Her action in this regard was consistent with her acquiescence in the contract and an acceptance of its provisions. Such conduct continued for more than seventeen months after Christian Guhl's death and before appellants instituted this suit. In the meantime, in addition to the collection of the rents, she made a claim in the county court for an award, in which proceeding the executors interposed the ante-nuptial contract as a bar to such claim. She received from the executors a small amount of interest collected from government bonds and accepted it as income from the personal property.

Appellee's complaint of lack of knowledge of the extent of Christian Guhl's property holdings is directed to the time of the execution of the ante-nuptial agreement and there is no evidence that she did not possess full knowledge of the property or its annual income when she accepted the benefits of the contract after his death. It does not appear she made any claim the contract was voidable by reason of misrepresentation or fraud until she filed her alternative answer March 4, 1940, more than two years after she first began to receive benefits under its provisions. The rule is that where a party desires to rescind a contract upon the ground of fraud, he must, upon the discovery of the

fact, at once announce his purpose and adhere to it. (*Hansen* v. *Gavin*, 280 Ill. 354.) In *Greenwood* v. *Fenn*, 136 Ill. 146, quoting from *Grymes* v. *Sanders*, 93 U. S. 55, it was said: "He is not permitted to play fast and loose. Delay and vacillation are fatal to the right which had before subsisted." It was not necessary for appellants to allege and prove facts negativing a presumption of fraud that would arise from any fiduciary relationship.

Appellee further contends that since appellants did not deny the allegation of fraud as contained in her answer it is confessed. The allegation was that she was not informed and had no knowledge of the extent of his property. Such allegation is barren of any acts from which it would appear or might be assumed that her ignorance as to his property was due to anything he said or did or that he failed to do.

In making the contention that the contractual provisions were disproportionate to the amount that she would have received out of his estate under the law as widow, appellee invokes the rule that where parties are engaged to be married before the execution of an ante-nuptial contract a confidential relationship is deemed to exist, and if the provision made for the intended wife in such contract is so small as to be disproportionate to the extent and value of the intended husband's estate, the presumption is raised of an intentional concealment of the extent of such estate. That such presumption prevails is well settled by our decisions. (*Kuhnen* v. *Kuhnen*, 351 Ill. 591; *Brown* v. *Brown*, 329 id. 198; *Debolt* v. *Blackburn*, 328 id. 420.) But such a presumption is not evidence, and as soon as contrary evidence is produced the presumption vanishes. *Sharp* v. *Sharp*, 333 Ill. 267; *Osborne* v. *Osborne*, 325 id. 229; *Megginson* v. *Megginson*, 367 id. 168.

The evidence is that Christian Guhl and appellee went to a law office in Freeport and a contract was drawn by an attorney but not signed. Each of the parties was given

a copy and appellee took hers to an attorney in Darlington, Wisconsin. He prepared another contract which she executed and acknowledged in Wisconsin. Christian Guhl executed and acknowledged it in Freeport two days later. There is no evidence that he made any representations in regard to his property interests, the value of his estate or his income. The evidence shows that at the time the contract was signed his real estate was worth approximately $15,000 and had a gross rental value of $150 per month. The evidence is not clear as to the amount and value of the personal property but it totaled approximately $12,000.

Appellee's property was located in Darlington, and consisted of a lot improved with a store building and a residence property. The store property was mortgaged for $2500 and rented for $55 per month. The residence property was mortgaged for $1500. Both mortgages were foreclosed after her marriage and appellee lost all rights in the residence property but, at the time of taking the evidence, the redemption period had not expired on the other property. In addition to the two properties, she had an interest in a farm mortgage which had an actual value of $2100. This she gave to her son soon after her marriage to Christian Guhl.

The mere fact that appellee will not receive as much from her husband's estate as she would had no ante-nuptial agreement been executed does not afford ground for holding the contract invalid. *Megginson* v. *Megginson, supra; Geiger* v. *Merle,* 360 Ill. 497; *Landes* v. *Landes,* 268 id. 11.

The defense set forth in the answer that the contract was without consideration is fully answered by the decisions of this court that marriage is a sufficient consideration for an ante-nuptial contract. *Seuss* v. *Schukat,* 358 Ill. 27; *Morris* v. *Masters,* 349 id. 455; *Geiger* v. *Merle, supra.*

In construing an ante-nuptial agreement the rules governing construction and interpretation of contracts gen-

erally are applicable. To arrive at a proper conclusion of the terms of a contract, it should be considered in its entirety to ascertain its general scope or purpose for out of that will come the real intention of parties. (*Collins* v. *Phillips*, 259 Ill. 405; *Seuss* v. *Schukat, supra.*) Words used need not be cast into a particular form to constitute such a contract, they may be informal ones; all that is required is a manifestation of the intentions of the parties. Those intentions will prevail if they can be given effect in law or equity. (*Hudnall* v. *Ham*, 183 Ill. 486.) Resort will be had to the recitals of a contract if necessary to determine the intention of the parties and the operative provisions thereof. *Dunlop* v. *Lamb*, 182 Ill. 319.

The recital provisions of the contract in question evidence an intent on the part of the makers to contract in reference to their respective properties and to contract in reference to the dower, curtesy, homestead and widow's award rights that a survivor would have in the property of the other. It was the expressed wish that the property each had should descend to their respective children the same as though no marriage was solemnized, subject to the right of the wife to have, for life, the use and income of the real and personal property belonging to the husband.

The appellants were the only children of Christian Guhl and all were of legal age. They were not entitled to share in the benefit of any award. Appellee, being the only person interested in its provisions, had the right to relinquish her widow's award and such provision should be enforced against her, (*Spencer* v. *Boardman*, 118 Ill. 553; *McMahill* v. *McMahill*, 113 id. 461;) and this is true even though the award is not relinquished in the agreement by the use of that very word, provided the contract contains other language sufficiently comprehensive to show that it was the intent of the parties to include the award. *Pavlicek* v. *Roessler*, 222 Ill. 83.

Appellee's contention that homestead rights were not released by the contract need not be given extended con-

sideration for the reason the agreement gave her a life estate in all the real estate which included the premises in which she claimed the homestead interest. Under the contract, she may enjoy the use of the property as a life tenant, which is all she would have a right to if she was in possession of it as a homestead.

Appellee further contends that the appellants' amended complaint in effect asked for specific performance of the ante-nuptial agreement and that it should be denied for the reason that they had not fully performed their part of the contract by delivering to appellee all the personal property. It was alleged in appellants' amended complaint that all the property had been delivered to appellee except certain items which were being withheld until the amount of the indebtedness against the estate had been determined. The settlement of the estate was delayed by reason of the litigation. On the hearing, it was stipulated that no claims had been filed against the estate so that upon a termination of the litigation appellants would be in position to make final settlement and deliver the personal property in their hands to appellee.

Appellee's interest in the real estate is that of a life tenant and, as such, she should pay the annual taxes charged against the property. (*Blair* v. *Johnson,* 215 Ill. 552; *Hanna* v. *Palmer,* 194 id. 41.) The duty rests upon a life tenant to preserve the property in his possession and prevent waste. (*Lehman* v. *Rothbarth,* 111 Ill. 185.) No evidence was offered as to appellee's neglect in making repairs and none of the relief asked in the amended complaint in that regard can be granted.

For the reasons stated, the decree of the circuit court is reversed and the cause remanded, with directions to proceed in accordance with the views expressed.

*Reversed and remanded, with directions.*