FREDERICK DOUGLAS KING *et al.,* Plaintiffs-Appellants, v. IRMA TRAVIS *et al.,* Defendants-Appellees.

First District (5th Division)   No. 86—1913

Opinion filed May 13, 1988.

Herbert Frederick Friedman, Ltd., of Winnetka (Herbert Frederick Friedman, of counsel), for appellants.

Janet L. Hermann, of Fisch, Lansky & Greenburg, of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiffs Frederick Douglas King and Betty Jackson appeal the determination of the circuit court of Cook County, pursuant to a motion for summary judgment (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005), that a testamentary instrument, executed by their natural father and his wife, was not a joint and mutual will.

We affirm.

In 1971, Fred Travis and his wife, Irma Travis, together executed a duly witnessed will consisting of three pages. The will, in its entirety, is set out below:

"JOINT AND MUTUAL
LAST WILL AND TESTAMENT

We, FRED TRAVIS and IRMA TRAVIS, husband and wife, each being of sound mind and memory, do hereby Make, Ordain, Publish and Declare this our Joint and Mutual Last Will and Testament, hereby revoking all former Wills and Codicils either or both of us may have made heretofore.

FIRST: I, FRED TRAVIS, hereby direct my Executrix hereinafter named pay all my just debts and funeral expenses as soon after my death as may be convenient.

SECOND: All the Rest, Residue and Remainder of my Estate, Real, Personal or Mixed, of whatever kind and wherever situated, I Give, Devise and Bequeath to my beloved wife IRMA, to Have and to Hold in Fee Simple Absolute forever, provided only that she survive me by seven (7) calendar days including the day of my death.

THIRD: In the event my beloved wife IRMA shall not survive me as aforesaid, then I Give, Devise and Bequeath all the Rest, Residue and Remainder of my Estate to FREDERICK DOUGLAS KING, of Chicago, Illinois, and to BETTY JACKSON, of Fort Wayne, Indiana, share and share alike, or to the survivor of them.

FOURTH: I hereby nominate and appoint my beloved wife

IRMA Executrix of this, my Last Will and Testament, without bond or surety.

FIFTH: I, IRMA TRAVIS, hereby direct my Executor hereinafter named pay all my just debts and funeral expenses as soon after my death as may be convenient.

SIXTH: All the Rest, Residue and Remainder of my Estate, Real, Personal or Mixed, of whatever kind and wherever situated, I Give, Devise and Bequeath to my beloved husband FRED, to Have and to Hold in Fee Simple Absolute, forever, provided that he survive me by seven (7) calendar days, including the day of my death.

SEVENTH: In the event my beloved husband FRED shall not survive me as aforesaid then I Give, Devise and Bequeath all Rest, Residue and Remainder of My Estate to FREDERICK DOUGLAS KING, of Chicago, Illinois, and to BETTY JACKSON, of Fort Wayne, Indiana, share and share alike, or to the survivor of them.

EIGHTH: I hereby nominate and appoint my beloved husband FRED Executor of this, my Last Will and Testament, without bond or surety.

IN WITNESS WHEREOF we have subscribed our names to this, our Joint and Mutual Last Will and Testament, this _____ day of _____ 1971, in Chicago, Illinois.

/s/ FRED TRAVIS          /s/ MRS. IRMA TRAVIS
FRED TRAVIS              IRMA TRAVIS
Testator                Testatrix

We, the undersigned witnesses, DO HEREBY CERTIFY, that FRED TRAVIS and IRMA TRAVIS husband and wife, did, as Testator and Testatrix, on the day and year thereof, in our presence, Sign, Seal, Publish and Declare the foregoing instrument consisting of three (3) pages this included, as and for their Joint and Mutual Last Will and Testament, and we in their presence and in the presence of each other have subscribed our names as witnesses hereunto, verily believing them to be of sound and disposing mind and memory.

[Witnesses signatures.]"

Fred Travis died on June 21, 1978. He is survived by Irma Travis and plaintiffs King and Jackson, respectively, his natural son and daughter by different women other than Irma Travis. For purposes of clarification, we note that Irma Travis presently resides with defendants Eddie and Geraldine Jackson, both adults, neither of whom is re-

lated to plaintiff Betty Jackson. Neither plaintiff has been adopted by Irma Travis.

Following timely placement of the will of record in the probate division of the circuit court of Cook County, plaintiffs instituted an action for construction of the will giving rise to the instant appeal. Plaintiffs' complaint below alleged that the will of Fred and Irma Travis was a valid joint and mutual will, executed pursuant to a contract or agreement between the testators. The complaint stated that plaintiffs are third-party beneficiaries of that contract or agreement and that the "contractual compact" between the testators to distribute property according to the provisions of the will became binding and irrevocable upon the death of Fred Travis and prohibited Irma Travis from any disposition of property contrary to the express intention of the will.

Defendants answered denying all material allegations of the complaint.

On December 16, 1985, defendants filed a motion for summary judgment which stated that the will, although labeled as the "Joint and Mutual Last Will and Testament" of Fred and Irma Travis, was not a joint and mutual will as that term is understood under Illinois law and that no issue of fact existed to preclude such determination. Defendants' motion argued that the will was merely an ordinary will and contained no language indicating it was executed pursuant to any contract not to revoke by the surviving spouse. In support of the motion, defendants attached the affidavits of Irma Travis and attorney Irving Margolis, drafter of the will.

Plaintiffs moved to strike defendants' motion for summary judgment on the basis that the motion merely repeated the arguments advanced in a previously unsuccessful motion to dismiss. The motion to strike included a motion to strike the Travis and Margolis affidavits. After a hearing on that motion on March 11, 1986, the judge below denied the motion to strike and, over plaintiffs' objections, mistakenly granted summary judgment in favor of defendants. The order of summary judgment was subsequently vacated and plaintiffs were allowed to file a response to the motion for summary judgment with supporting counteraffidavits. In support of the response, plaintiffs attached three counteraffidavits for the purpose of establishing the purported intentions of the testators at the time of the drafting of the will.

On June 13, 1986, together with a reply to plaintiffs' response, defendants filed a motion to strike plaintiffs' counteraffidavits as inadmissible hearsay. Following argument on June 16, 1986, summary judgment was granted in favor of defendants. The order entered re-

cites that summary judgment was granted considering all affidavits and counteraffidavits. However, although that order further notes that plaintiffs' motion to strike defendants' supporting affidavits was previously heard and denied, the order is otherwise silent as to defendants' motion to strike plaintiffs' counteraffidavits.

A timely notice of appeal from that order was filed on July 15, 1986.

OPINION

On appeal, plaintiffs contend that a question of fact exists as to the intention of the testator, Fred Travis, regarding the inheritance or disinheritance of his children under the will and that summary judgment was improperly granted below upon consideration of the language of the will alone. Plaintiffs argue that the lower court erred in disregarding the holding of *Rauch v. Rauch* (1983), 112 Ill. App. 3d 198, 445 N.E.2d 77, the leading authority in Illinois for determining the existence of a valid joint and mutual will. Plaintiffs state that the will at issue satisfies the criteria for analyzing such wills.

Plaintiffs further argue that the lower court disregarded and failed to accept as true facts stated in the counteraffidavits supplied by plaintiffs and erred in not striking defendants' supporting affidavits. Plaintiffs contend that the entry of summary judgment against plaintiffs is therefore a particularly inappropriate outcome because issues of fact, as raised by the counteraffidavits, existed.

Defendants, on the other hand, contend that the instrument belies its label as a valid joint and mutual will. Although defendants do not dispute the will was jointly executed, defendants argue that the will fails to contain the characteristics common to true joint and mutual wills as set out in *Rauch.*

■■ Construction of wills follows basic rules and principles well defined in Illinois. The trial court is required to ascertain and give effect to the intent of the testator, and the issue on appeal in such cases is whether the trial court's construction truly accomplished that objective. (*Miller v. O'Neil* (1977), 47 Ill. App. 3d 340, 361 N.E.2d 1165.) We note that normally a will is considered to be an integrated written document and a court's examination of the instrument will not extend beyond the "four corners" of the instrument in interpreting its meaning. (*In re Estate of Hayden* (1974), 23 Ill. App. 3d 242, 318 N.E.2d 668.) However, if some ambiguity, uncertainty or doubt exists, extrinsic evidence may be introduced to aid the court in determining the intent of the testator. To that end, the court may consider the circumstances surrounding the testator when the will was made. *In re*

*Estate of Rettig* (1981), 100 Ill. App. 3d 653, 427 N.E.2d 235.

■■■ A joint and mutual will is a single testamentary instrument which contains the wills of two or more persons, executed jointly, and disposes of property owned in severalty, in common, or jointly by the testators. (*Rauch v. Rauch* (1983), 112 Ill. App. 3d 198, 445 N.E.2d 77.) A joint and mutual will must be executed pursuant to a contract between the testators requiring the survivor of them to dispose of the property as the will's provisions instruct. (*Peck v. Drennan* (1951), 411 Ill. 31, 103 N.E.2d 63.) The will itself may comprise the contract. (*Helms v. Darmstatter* (1966), 34 Ill. 2d 295, 215 N.E.2d 245.) The contract embodied in a joint and mutual will becomes irrevocable after the death of one of the testators. (*In re Estate of Edwards* (1954), 3 Ill. 2d 116, 120 N.E.2d 10.) The survivor is estopped from disposing of the property other than as contemplated in the will, and the contract between the testators is enforceable by third-party beneficiaries. (*Bonczkowski v. Kucharski* (1958), 13 Ill. 2d 443, 150 N.E.2d 144.) It has been noted that Illinois courts have in the past attached a presumption in the instance of a will jointly executed by a husband and wife that that execution was pursuant to a contract between them not to revoke the will. More recently, courts look to the terminology of the will itself to adduce the testators' intentions. *In re Estate of Schwebel* (1985), 133 Ill. App. 3d 777, 479 N.E.2d 500.

■ In contrast to the foregoing, where a single instrument is merely made the will of two or more individuals and is jointly executed by them, none of the attendant burdens or restrictions of a joint and mutual will apply. *Rauch v. Rauch* (1983), 112 Ill. App. 3d 198, 445 N.E.2d 77.

■ To aid in what must necessarily be a case-by-case analysis of whether or not a particular instrument is a valid joint and mutual will, rather than simply a joint will, Illinois courts consider the following five distinguishing characteristics. First, the court looks to the label the testators have assigned to the will. Second, the court looks to the use by the testators of common plural terms such as "we" and "our" as further evidence of the testators' intent to make a joint and mutual will. Third, the court looks for a pooling of the testators' interests. Fourth, the court looks for reciprocal provisions in the will; whether the testators made a disposition of the entire estate in favor of the survivor of them. Finally, the court looks for a common dispositive scheme under which the parties dispose of the common fund by bequeathing it to their heirs in approximately equal shares. *Rauch*, 112 Ill. App. 3d at 201, 445 N.E.2d at 80.

■ We proceed to examine, in turn, of each of the above enumer-

ated characteristics with respect to the will of Fred and Irma Travis before us.

First, there can be no doubt that the will is referred to as a joint and mutual will. In addition to the title, "Joint and Mutual Last Will and Testament" appearing at the top of the first page of the will, that same term appears three other times in the instrument: in the first sentence of the text, in the paragraph under which the testators affixed their signatures, and in the attestation paragraph of the will. Second, plural terms are used throughout the instrument. The terms "we" and "our" are used in the first sentence of the will and in the paragraph under which the testators affixed their signatures. Additionally, the attestation paragraph contains the terms "their" and "them" in reference to the testators. Third, as indicated in paragraphs SECOND and SIXTH, the will contemplates the pooling of interests into a common fund by the use of the language "All the Rest, Residue and Remainder of my Estate, Real, Personal or Mixed, of whatever kind and wherever situated" pertaining to the respective estates of both testators. Fourth, the will contains reciprocal provisions. Paragraphs SECOND AND SIXTH provide for reciprocal devolvement of property, as between Fred and Irma Travis, depending on their respective deaths, so long as the survivor lives beyond seven days of the other.

The difficulty in the instant will, however, occurs with respect to the last characteristic, as set out above, commonly present in valid joint and mutual wills. We consider the gift of the common fund of the will to heirs a crucial element. It is this enforceable bequest, at the conclusion of the life estate created in the surviving testator, which makes a true joint and mutual will unique among testamentary dispositions.

Paragraphs SECOND and SIXTH provide that, in the instance of either Fred or Irma Travis surviving the death of the other by seven days, the survivor is to take any property covered under the will "in Fee Simple Absolute Forever." Thus, provided either Fred or Irma Travis outlived the other by one week, unambiguous language of the will gives the survivor the power to dispose of the entirety of the will's bounty. Notably absent is any express or implicit language of bequest by the surviving testator to any third party. Instead, the will, in paragraphs THIRD and SEVENTH, specifically provides that any rights of plaintiffs to take under the will arise only upon the failure of the condition of the surviving testator's own absolute right to enjoy the property. Because plaintiffs' interests depend upon the occurrence of the above condition and not an actual bequest or implicit promise

of the surviving testator to convey at death, the scheme of the will of Fred and Irma Travis falls short of evidencing the characteristics commonly present in a joint and mutual will. Therefore, we agree with the construction of the will given below.

■ Further, although the order entered below recites that all affidavits and counteraffidavits were considered by the trial court in construing the will, our review of the record indicates that the court granted summary judgment based upon consideration of the language of the will, finding no ambiguity present. We agree that the will before us contains no ambiguities which would prevent a determination of its construction based upon a reading of the instrument and application of the appropriate rules of law. In the absence of any ambiguity, the admission of parole evidence is unnecessary. (*Young v. Whisler* (1960), 19 Ill. 2d 501, 167 N.E.2d 191.) Therefore, the issue of whether the court properly considered the affidavits and counteraffidavits on file is immaterial to our disposition.

For the reasons stated, the order of summary judgment is affirmed.

Affirmed.

SULLIVAN and MURRAY, JJ., concur.